No. 26-8010

IN THE

# United States Court of Appeals for the Eighth Circuit

Cattle Class Plaintiffs,

*Respondents*,

v.

Cargill, Inc.; Cargill Meat Solutions Corporation; National Beef Packing Company, LLC; Tyson Foods, Inc.; Tyson Fresh Meats, Inc.,

*Petitioners.*

On Appeal from the United States District Court

for the District of Minnesota
The Honorable John R. Tunheim

No. 22-md-3031

## ANSWER TO PETITION FOR REVIEW OF CLASS CERTIFICATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

Patrick J. McGahan
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: 860-537-5537
Fax.: 860-537-4432
pmcgahan@scott-scott.com

Daniel O. Herrera
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
Tel.: 312-782-4882
Fax: 312-782-4485
dherrera@caffertyclobes.com

*Counsel for Plaintiffs/Respondents*
(additional counsel listed on signature page)

**TABLE OF CONTENTS**

INTRODUCTION ....... 1

STATEMENT OF THE CASE ....... 4

QUESTIONS PRESENTED ....... 7

STANDARD OF REVIEW ....... 7

REASONS FOR DENYING THE PETITION ....... 8

I. THE PETITION PRESENTS NO GROUND FOR INTERLOCUTORY REVIEW ....... 8

II. THE DISTRICT COURT CORRECTLY HELD PLAINTIFFS TO THEIR PREDOMINANCE BURDEN ....... 9

III. DEFENDANTS' ATTACKS ON DR. LAMB'S ADMISSIBLE OPINIONS DO NOT SHOW THAT THE DISTRICT COURT ABUSED ITS DISCRETION ....... 12

IV. THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT PLAINTIFFS PRESENTED A MODEL CAPABLE OF SHOWING CLASSWIDE INJURY ....... 18

CONCLUSION ....... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 12

*Black v. Occidental Petroleum Corp.*,
69 F.4th 1161 (10th Cir. 2023) .......... 21

*Blades v. Monsanto Co.*,
400 F.3d 562 (8th Cir. 2005) .......... 10

*Chapman v. Wagener Equities*,
747 F.3d 489 (7th Cir. 2014) .......... 9

*City of Philadelphia v. Banc of Am. Secs. LLC*,
2025 WL 2180607 (2d Cir. Aug. 1, 2025) .......... 17

*Cody v. City of St. Louis ex rel. Medium Sec. Inst.*,
103 F.4th 523 (8th Cir. 2024) .......... 8, 14

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 2

*Consumer Indirect Purchaser v. Agri Stats, Inc.*,
No. 23-8002 (8th Cir. Apr. 12, 2023) .......... 16

*Custom Hair Designs by Sandy v. Cent. Payment Co. LLC*,
984 F.3d 595 (8th Cir. 2020) .......... 2, 8, 13, 22

*Eagle Tech. v. Expander Americas, Inc.*,
783 F.3d 1131 (8th Cir. 2015) .......... 21

*In re Aluminum Warehousing Antitrust Litigation*,
336 F.R.D. 5 (S.D.N.Y. 2020) .......... 15

*In re Broiler Chicken Grower Antitrust Litig. (No. II)*,
2024 WL 2117359 (E.D. Okla. May 8, 2024) .......... 12

*In re Class 8 Transmission Indirect Purchaser Antitrust Litigation*,
140 F. Supp. 3d 339 (D. Del. 2015)....................15

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002)....................8, 9

*In re Humana, Inc.*,
163 F.4th 376 (6th Cir. 2025)....................9

*In re Johnson*,
760 F.3d 66 (D.C. Cir. 2014)....................9

*In re Lamictal Direct Purchaser Antitrust Litigation*,
957 F.3d 184 (3d Cir. 2020)....................15

*In re Mushroom Direct Purchaser Antitrust Litig.*,
319 F.R.D. 158 (E.D. Pa. 2016)....................21

*In re Pork Antitrust Litigation*,
665 F. Supp. 3d 967 (D. Minn. 2023)....................20

*In re Processed Egg Products Antitrust Litigation*,
312 F.R.D. 124 (E.D. Pa. 2015)....................15

*In re Turkey Antitrust Litig.*,
2025 WL 264021 (N.D. Ill. Jan. 22, 2025)....................16

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014)....................13

*In re Valve Antitrust Litig.*,
780 F. Supp. 3d 1110 (W.D. Wash. 2024)....................21

*In re Wholesale Grocery Prods. Antitrust Litig.*,
849 F.3d 761 (8th Cir. 2017)....................7

*In re Wholesale Grocery Prods. Antitrust Litig.*,
946 F.3d 995 (8th Cir. 2019)....................10

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011)....................3

*Johnson v. Mead Johnson & Co., LLC*,
754 F.3d 557 (8th Cir. 2014) ........................................................................20

*Kleen Prod. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ....................................................................16, 21

*Miami Products & Chemical Co. v. Olin Corp.*,
2023 WL 8946114 (W.D.N.Y. Dec. 28, 2023) .................................................15

*Morgan v. United Parcel Serv. of Am., Inc.*,
380 F.3d 459 (8th Cir. 2004) ........................................................................20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..................................................................*passim*

*Postawko v. Missouri Dep't of Corr.*,
910 F.3d 1030 (8th Cir. 2018) ......................................................................12

*Prado-Steiman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ...................................................................7, 9

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)......................................................................................*passim*

*United States v. Moua*,
145 F.4th 929 (8th Cir. 2025) ......................................................................21

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000).........................................................................21

## INTRODUCTION

This case arises from a multiyear conspiracy among the nation's dominant beef packers—Cargill, JBS, National Beef, and Tyson—to suppress fed cattle prices. Plaintiffs and the class they represent are cattlemen who sold fed cattle directly to Defendants from June 1, 2015 to February 29, 2020 (the "Producer Class").

The district court (Tunheim, J.) certified the Producer Class after a two-day hearing and on a record that, in the Cattle case alone, comprised 560 exhibits, 360 pages of briefing (including *Daubert* motions), and nearly 1,000 pages of expert reports, among them the reports of Plaintiffs' expert, Dr. Russell Lamb. The court's 48-page opinion correctly recited the standards governing class certification, examined each relevant Rule 23 factor, and cited the record extensively in support of every conclusion drawn. Slip op. (ECF 1609) ("Op."). Defendants do not claim otherwise.

Defendants' petition identifies nothing that would justify disrupting this case, now in its eighth year. Petitioners-Defendants' 23(f) Petition (July 30, 2026) ("Pet."). It does not seek review of the district court's refusal to exclude Dr. Lamb's opinions, and it identifies no misstatement in the court's recitation of the law governing class certification. Defendants instead contend that the court committed two errors, which they label the "burden error" and the "proof error." Both rest on a myopic and unfaithful reading of Plaintiffs' allegations and of an opinion that

dutifully applied the law to the facts presented. Defendants therefore "bear[] a[n] . . . onerous burden in challenging certification where the initial certification decision was carefully considered and made after certification-related discovery." *Custom Hair Designs by Sandy v. Cent. Payment Co. LLC*, 984 F.3d 595, 600 (8th Cir. 2020) (citation modified). They cannot meet it.

The supposed "burden error" rests on Defendants' mischaracterization of the conspiracy Plaintiffs allege. Plaintiffs plead a single, continuous conspiracy to suppress fed cattle prices using several levers, including slaughtering only their "share" of the available cattle, jointly managing slaughter volumes, refraining from bidding on cattle for which co-Defendants had already bid, and "backing up" cattle. Defendants recast that conspiracy as an agreement to engage in episodic incidents of "backing up" cattlemen. The district court read the allegations correctly, finding "a single, persistent conspiracy" to "'suppress fed cattle prices' . . . using various levers[,]" and that "Dr. Lamb's regression model," which measured that price suppression, "is consistent with this allegation." Op.30. It therefore held that Plaintiffs' "'damages case' is consistent with their 'liability case.'" *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). Defendants sidestep that straightforward application of *Comcast* by misquoting a sentence from Dr. Lamb's report and attacking the merits of Plaintiffs' conspiracy. Neither warrants review.

Nor did the district court shift Plaintiffs' predominance burden, which is what Defendants mean by the so-called "burden error." It correctly placed on Plaintiffs the burden of showing that common evidence could establish the elements of the federal antitrust claims they plead using "any admissible evidence at this stage in the litigation." Op.14 (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 612-14 (8th Cir. 2011)). It then held Plaintiffs to that burden, finding that "Plaintiffs have provided sufficient evidence that all class members were impacted similarly enough over the entire Producer Class period that questions of fact common to class members predominate." Op.34. The court left for trial the existence and scope of the conspiracy pled: a merits question. Op.32.

Defendants' second claim of error fares no better. Their "proof error" is that some of the fed-cattle purchase data underlying Dr. Lamb's standard, well-accepted regression analysis identifies the feedlot or payee associated with each lot rather than the cattle's ultimate owner. That data is Defendants' own, reflecting every lot of cattle the Producer Class sold. Defendants call this "unprecedented proof" but identify no authority requiring that conclusion. Nor could they, given that the "use of statistical evidence, or so-called representative evidence" in class actions is limited only by its "reliab[ility] in proving . . . the [claim's] elements." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455 (2016).

Defendants pressed these same reliability attacks below and the district court rejected them. It observed that "Defendants have pointed to no reason why the feedlot payment data cannot be used as a proxy for owner payment data," because "underpayments, if any, to the feedyard, would be passed on to the owner, regardless of the ownership arrangement in place at the time of purchase by Defendants," and because "for at least one Defendant, Cargill, feedyard and payee data was consistent" in demonstrating impact. Op.33, 40-43.

Having addressed those criticisms, and admitted Dr. Lamb's analyses, the district court did not abuse its discretion in weighing them alongside Plaintiffs' other common evidence of impact.

The petition should be denied.

## STATEMENT OF THE CASE

Plaintiffs allege that Defendants, which together "account for over 80% of the fed cattle bought, slaughtered, and sold as beef in the United States" (Op.4), entered a single, continuous conspiracy beginning in June 2015 to suppress fed cattle prices. Compl. (19-cv-1222, ECF 312) ¶¶1, 123, 133-34. Fed cattle are a commodity whose prices are tightly linked across contracting methods, packing facilities, breeds, and feedyards. Lamb Rpt. (ECF 1342) ¶¶184-85, 382-404. As Tyson's head cattle buyer explained, all cattle are purchased at "the same price," the baseline price established in the weekly cash market and reported daily by the USDA. ECF 888-3, Ex. 3,

Gerber Dep. 92:13-93:10; Lamb Rpt. ¶¶130-143, 209-21, 235-241, §VI.A.2; ECF 880, 8-9.

Defendants used several levers to effectuate their conspiracy, including:

- slaughtering only their "share" of the cattle available at any given time;[1]
- shortening slaughter schedules or cutting planned slaughter, reducing cash market competition, and backing up cattlemen;[2] and
- refraining from bidding on cattle for which co-Defendants had already bid.[3]

Compl. ¶¶1, 9, 12, 123, 133-34; Lamb Reply (ECF 1257-01) ¶¶19-27.

Plaintiffs filed suit in April 2019, alleging violations of the Sherman Act and the Packers and Stockyards Act on behalf of the Producer Class, and of the Commodity Exchange Act on behalf of live cattle futures traders (the "Exchange Class").[4]

Plaintiffs moved to certify three classes, including the Producer Class under Rule 23(b)(3). They retained Dr. Lamb to analyze whether the economic evidence

---

1 E.g., ECF 883-3, Ex. 14 39:8-12; Ex. 11 56:2-5, 56:23-57:1, 175:20-176:2; Ex. 22 35:16-24; Ex. 25 at CARGILL001857147; Ex. 10 225:8-11.

2 E.g., ECF 883-6, Ex. 92, Ex. 105, 130, 132.

3 ECF 883-5, Ex. 55 (Tyson passing on cattle "to let Cargill get what [it] need[s]").

4 Plaintiffs and JBS previously settled. ECF 1438.

is consistent with the alleged conspiracy and whether common evidence can show it harmed the Producer Class. Lamb Rpt. ¶11.

The district court found the record evidence and Dr. Lamb's admissible opinions could show common impact on all Producer Class members. Op.29-34. The court highlighted, "[f]or example" that:

- "Dr. Lamb analyzed the characteristics of the Fed Cattle Industry during Producer Class Period including Defendants' dominance of the packing stage of the fed cattle supply chain, the lack of elasticity in the supply of fed cattle and the inelastic demand for beef, and the presence of high barriers to entry into beef packing." Op.32 (citing e.g., Lamb Rpt. ¶189).

- "Dr. Lamb also analyzed the price structure for fed cattle prices paid to individual feedyards, as well as structural characteristics of the fed cattle market that would tend to prevent individual feedyards from avoiding the impact of the alleged conspiracy." *Id.* (citing Lamb Rpt. ¶¶380-408).

- "Cattle Plaintiffs and Dr. Lamb tied this evidence to Cattle Plaintiffs' allegations that Defendants 'jointly manag[ed] slaughter' and backed up cattle to 'pressure[] feeders to sell their product at reduced prices.'" *Id.* (quoting Cattle Pls.' Reply at 8) (alterations in original).

Before certifying, the court detailed the standard of review (Op.11-19), undertook a rigorous analysis of the Rule 23 requirements, addressed each of Defendants' challenges (including those raised by *Daubert* motion), and resolved every dispute necessary to determine that the Producer Class satisfied each Rule 23 element (Op.28-43).

* * * *

Defendants identify no legal error and no clearly erroneous factual finding. The district court did not abuse its discretion in certifying the Producer Class, the petition raises no novel question of law, and the certification order presents no death-knell risk. The petition should be denied.

## QUESTIONS PRESENTED

Whether the district court abused its discretion in certifying the Producer Class when it:

(a) Rejected Defendants' recasting of Plaintiffs' price suppression theory of harm;

(b) Left the scope and duration of the conspiracy alleged as a merits question for the factfinder; and

(c) Found that Dr. Lamb's regression and associated in-sample prediction—run on Defendants' own records of every lot of fed cattle they purchased during the Producer Class period—could show classwide injury, where those records sometimes identify the shipping feedlot rather than the owner of the cattle?

## STANDARD OF REVIEW

Rule 23(f) permits interlocutory appeal in only "a few special situations" that are the exceptions to the general rule that "we do not review district court rulings that are not yet final." *In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 765 (8th Cir. 2017); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1276-77 (11th Cir. 2000) (urging "restraint in accepting Rule 23(f) petitions" because interlocutory appeals are "'disruptive, time-consuming, and expensive,' and consequently are generally disfavored") (citation modified).

"A district court has 'broad discretion' to determine whether certification is appropriate. [Its] rulings on questions of law are reviewed de novo and its application of the law is reviewed for an abuse of discretion. The district court's factual findings are reversible only if clearly erroneous." *Cody v. City of St. Louis ex rel. Medium Sec. Inst.*, 103 F.4th 523, 528 (8th Cir. 2024) (citation modified). "[A] defendant bears a more onerous burden in challenging certification where the initial certification decision was carefully considered and made after certification-related discovery." *Custom Hair*, 984 F.3d at 600 (citation modified).

## REASONS FOR DENYING THE PETITION

### I. THE PETITION PRESENTS NO GROUND FOR INTERLOCUTORY REVIEW

Defendants identify nothing in the district court's well-reasoned opinion that warrants interlocutory appeal. This circuit and others generally accept Rule 23(f) appeals in three circumstances: (1) when denial of certification effectively ends the litigation (the "death-knell" doctrine); (2) when certification so drastically raises the stakes that defendants feel compelled to settle (the "death-knell" in reverse); and (3) when the appeal would clarify an important point of law in dispute. E.g., *In re Delta Air Lines*, 310 F.3d 953, 957-60 (6th Cir. 2002) (surveying other circuits).

Defendants invoke only the second, describing in vague terms the threat of an "*in terrorem*" settlement resulting from certification of the Producer Class. Pet.11, 13. But to warrant review under Rule 23(f), "[t]he 'undue pressure' to settle should

be more than 'the impact of the class certification alone.'" *In re Humana, Inc.*, 163 F.4th 376, 384 (6th Cir. 2025).

Courts accordingly require defendants to support such claims with evidence demonstrating the crippling effects of continued litigation or a judgment. E.g., *Humana*, 163 F.4th at 384; *Prado-Steiman*, 221 F.3d at 1274. Here, "[D]efendants haven't told us what their assets are." *Chapman v. Wagener Equities*, 747 F.3d 489, 491 (7th Cir. 2014). Nor have they suggested they will stop litigating as aggressively as they have for seven years. *In re Johnson*, 760 F.3d 66, 72 (D.C. Cir. 2014).

Rule 23(f) appeals "should not become a vehicle for early review of a legal theory that underlies the merits of a class action." *Delta Air Lines*, 310 F.3d at 960. That is what Defendants seek here. The petition should be denied.

## II. THE DISTRICT COURT CORRECTLY HELD PLAINTIFFS TO THEIR PREDOMINANCE BURDEN

From the outset, Plaintiffs have alleged that Defendants engaged in a single, persistent conspiracy to fix and suppress fed cattle prices. That allegation opens the first paragraph of Plaintiffs' complaint and of their class certification motion. Compl. ¶1; Class Cert. Br. (ECF 880) at 1; Class Cert. Reply (ECF 1256) at 2, 7. The district court summarized this straightforward theory: "Plaintiffs' theory of harm is that 'Defendants conspired to suppress fed cattle **prices**'—not total slaughter numbers—using various levers including 'periodic restraint of their purchase and

slaughter volume, market share management, and other coordinated conduct.'" Op.30 (emphasis in original).

Defendants did not dispute that common evidence could prove the alleged conspiracy's existence; they challenged only impact. Op.23-25, 28-29. The court rejected Defendants' effort to recast Plaintiffs' allegations as a strawman claim that Plaintiffs did not plead and do not pursue: that the conspiracy was limited to periodic "reduction in the slaughter of fed cattle." Op.30 (quoting Defs. Class Cert. Opp. at 15).

With Plaintiffs' theory properly framed, the district court, citing *Comcast*, correctly concluded that Dr. Lamb's underpayment regression is "consistent with" Plaintiffs' allegation that Defendants engaged in a "'single, persistent conspiracy'" to "'suppress fed cattle prices,'" and therefore that Plaintiffs' "'damages case'" is "'consistent with their liability case.'" Op.30. *Comcast* does not require Plaintiffs to model separately the effect of each act taken in furtherance of a price-fixing conspiracy. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 679 (9th Cir. 2022).[5]

---

[5] Defendants' authorities are distinguishable because they involved heterogenous, non-commodity products and an unsupported benchmark market—none of which is at issue here. *See Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005) (no common method of demonstrating injury across hundreds of distinct seed products, some of which were not subject to alleged anticompetitive pricing practices, all of which were subject to individually negotiated prices in localized

Defendants build their petition on a single sentence from the order and a continued mischaracterization of Plaintiffs' allegations.[6]

That sentence reads: "[w]hile Defendants may be correct that the alleged episodic conduct had only episodic impact, Defendants would have to present evidence to that end to undermine Cattle Plaintiffs' theory of harm to the fact finder at trial." Op.30 (cited in Pet.1). It appears on the *very* same page as the court's description of Plaintiffs' theory as "a 'single, persistent conspiracy'" to "'suppress fed cattle prices' . . . using various levers," and within the section addressing Defendants' *Comcast* argument. The court's common impact analysis follows in the next section. Op.30-33. In context, the sentence makes the unremarkable point that whether the alleged conspiracy exists is a matter for "the fact finder at trial," and

---

markets); *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1002 (8th Cir. 2019) (no evidence that the "benchmark" market was an appropriate comparator for the market at issue).

[6] For example, Defendants misquote Dr. Lamb's summary of Plaintiffs' claim (Pet.15-16), ignoring his preceding sentence: "Plaintiffs allege that Defendants formed an anticompetitive agreement to reduce the prices paid for fed cattle[.]" Lamb Rpt. ¶9. Defendants also omit key parts of the sentence they do quote, including that Defendants "restricted capacity and/or capacity utilization of their packing plants[,]" which encompasses Defendants harvesting only their "share" of available cattle. *Compare* Lamb Rpt. ¶319 (describing backing up of producers as merely "one strategy . . . to drive down the price of cattle" among many Defendant actions "contrary to their individual self-interest absent the alleged conspiracy"), *with* Pet.8-9. *See also* Lamb Rpt. ¶¶285-327.

that Defendants remain free to prove there that the conspiracy was narrower than the one Plaintiffs pled. Op.30.

Defendants' "episodic" framing thus attacks the strength of Plaintiffs' proof of a continuous conspiracy, not whether that proof is common. At this stage, the only question is whether the conspiracy Plaintiffs alleged "is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453; *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, 2024 WL 2117359, at *15 (E.D. Okla. May 8, 2024) (same). The district court found that it was, and it did not need to resolve the dispute over the conspiracy's scope "in favor of the [Producer C]lass" to conclude that Plaintiffs met their Rule 23 burden. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1040 (8th Cir. 2018) (defendant may still challenge scope of conduct after certification).

## III. DEFENDANTS' ATTACKS ON DR. LAMB'S ADMISSIBLE OPINIONS DO NOT SHOW THAT THE DISTRICT COURT ABUSED ITS DISCRETION

Defendants do not challenge the district court's *Daubert* ruling and claim that their petition "*assume[s] Lamb's opinions and model are sound[.]*" Pet.12 (emphasis in original). They nonetheless attack those admissible analyses as insufficient to carry Plaintiffs' predominance burden, as part of the so-called "burden

error[.]" Pet.1, 16. None of those attacks carries Defendants' "'onerous burden in challenging certification.'" *Custom Hair*, 984 F.3d at 600.

The court catalogued examples of the common evidence supporting its conclusion that common evidence could prove classwide impact, including: (1) Defendants' dominance of the packing stage of the fed cattle supply chain; (2) the inelastic supply of fed cattle and the inelastic demand for beef; (3) the high barriers to entry into the packing market; and (4) market conditions and a pricing structure that "would tend to prevent individual feedyards from avoiding the impact of the alleged conspiracy." Op.32; Lamb Rpt. ¶15. The court also found that Dr. Lamb laid a sufficient foundation for the benchmark period and the variables he used to specify his regression model (Op.34 (quoting *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014); Op.40-41), and that Plaintiffs tied this impact evidence to the alleged anticompetitive conduct (Op.32).

As they did below, Defendants complain that Plaintiffs offered no common evidence sufficient to prove the causal chain associated with Defendants' own recasting of the price suppression conspiracy Plaintiffs allege. Pet.15-16.

Having heard extensive argument on the issue,[7] the district court rejected that recasting and found that Plaintiffs carried their burden on the theory they actually alleged, amply supported by the record before it. Op.32 (Plaintiffs "tie[] [their impact] evidence to Cattle Plaintiffs' allegations that Defendants 'jointly manag[ed] slaughter'" and backed up cattle to "pressure[] feeders to sell their product at reduced prices."); Class Cert. Hr'g Tr. (ECF 1491) 101:7-102:20 (addressing Defendants' improper recasting of Plaintiffs' claim); Lamb Reply ¶¶18-19, 23-27, 50-56, 156. That was not an abuse of discretion. *See Cody*, 103 F.4th at 528 ("A district court has broad discretion" on the question of "whether certification is appropriate") (citation modified).

Defendants' related attack on Dr. Lamb's market structure evidence and their complaint that some class members sold infrequently during the conspiracy (Pet.14), are belied by the record evidence the district court accepted, which shows that no cattleman, even one selling infrequently or in small quantities, could avoid the effects of Defendants' conspiracy. Op.32-34; *see also* Lamb Reply ¶194 ("smaller feedyards" were not able "to avoid impact"); Lamb Rpt. ¶¶382-408.[8]

---

7 Indeed, most argument at the hearing focused on whether Plaintiffs could show impact with common evidence. *See generally* Class Cert. Hr'g Tr. (ECF 1491) 23:15-28:14, 32:6-45:19, 53:2-83:9, 93:17-109:2.

8 Defendants conflate two separate exchanges from the hearing. Pet.14 n.4. The district court did not "recognize[]" that certain smaller feeders were uninjured; it

Defendants next contend, without relevant authority,[9] that Dr. Lamb's regression is "insufficient" because (1) Plaintiffs do not allege that total slaughter volume fell during the conspiracy, and (2) in Defendants' telling, the cattle market is too dissimilar from other livestock markets, like pork. Pet.16-17. Both premises fail on their own terms, and neither justifies review.

First, there is no novel issue to resolve. Courts consistently hold that plaintiffs need not proffer a production-side model to show classwide *price* effects. *See, e.g.*,

---

simply posed a question to Plaintiffs' counsel regarding Dr. Lamb's control of seasonality. Class Cert. Hr'g Tr. (ECF 1491) 33:3-34:18. Moreover, Defendants' claim of uninjured smaller feeders rests on improper attempts by Defendants' expert, Dr. McCrary, to calculate an underpayment coefficient for individual feedlots with too few transactions to generate a "reliable underpayment coefficient." Lamb Reply ¶194. After correcting that error, Dr. Lamb still found that 97.2% of feedlots have statistically significant underpayment coefficients. *Id.* ¶¶188-94.

[9] Defendants' authorities (Pet.17-18) in support of their attacks on Dr. Lamb's methodologies are inapposite, as each involved: (1) substantial variation in contracting methods causing variations in pricing and/or passthrough rates (*Miami Products & Chemical Co. v. Olin Corp.*, 2023 WL 8946114, at *19 (W.D.N.Y. Dec. 28, 2023); *In re Lamictal Direct Purchaser Antitrust Litigation*, 957 F.3d 184, 194 (3d Cir. 2020); and *In re Processed Egg Products Antitrust Litigation*, 312 F.R.D. 124, 159 (E.D. Pa. 2015)); (2) conflicting conspiracy levers that caused prices to move in opposing directions (*In re Aluminum Warehousing Antitrust Litigation*, 336 F.R.D. 5, 56-57 (S.D.N.Y. 2020)); or (3) the use of limited, non-representative datasets (*In re Class 8 Transmission Indirect Purchaser Antitrust Litigation*, 140 F. Supp. 3d 339, 353 (D. Del. 2015)). Here, by contrast, (a) the alleged levers of Defendants' conspiracy all supported the continuous suppression of cattle prices, and (b) the prices of all cattle within the class were directly linked to the baseline price established in the cash market and highly correlated across numerous dimensions.

*In re Turkey Antitrust Litig.*, 2025 WL 264021, at *15 (N.D. Ill. Jan. 22, 2025), *23(f) pet. denied*, No. 25-8004 (7th Cir. Mar. 4, 2025), ECF 25 (where plaintiffs offer common evidence of "cartel pricing," they need not "even perform a separate production regression 'of a hypothetical market free of any anticompetitive restraint, to which the actual market can be compared.'") (quoting *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 927 (7th Cir. 2016)).

Second, Defendants' claim that Dr. Lamb's analyses deserve different treatment from the similar evidence credited in *Pork* because "Defendants in *this* protein antitrust action do not control the supply of the animal available for slaughter[.]" Pet.16-17. The *Pork* 23(f) petition belies that claim. There, defendants, including Tyson, sought review of Judge Tunheim's *Pork* certification decision and made the same argument: that the pork industry was unique because (1) it was not vertically integrated, with "*independent [hog] farmers* account[ing] for approximately 70% of U.S. hog production," and (2) "all market hogs were processed" during the alleged conspiracy period. Rule 23(f) Petition at 8-9, 14-15, *Consumer Indirect Purchaser v. Agri Stats, Inc.*, No. 23-8002 (8th Cir. Apr. 12, 2023) (emphasis in original). This Court denied the *Pork* petition. Judgment, *Id.* (May 19, 2023). It should do the same here.[10]

[10] The record here also demonstrates that although Defendants did not own the cattle they slaughtered, their uncontested market power gave them substantial

Finally, Defendants claim that the district court's decision not to certify the separate and much narrower Exchange Class—which concerned live cattle futures contracts rather than physical cattle—shows the infirmity of the Producer Class certification because the court did "nothing to resolve" the "tension" between the two rulings. Pet.19. Not so. The court resolved that apparent tension in the very next sentence, "conclud[ing] . . . that Cattle Plaintiffs have presented sufficient evidence of common impact to all proposed class members across the **entire** Producer Class period to support the use of a common average model to calculate damages for that entire period." Op.32 n.22 (emphasis in original).[11] Nothing more was required.

The district court's thorough review of the record demonstrates that it "did not improperly shift the burden of determining whether the Rule 23(b)(3) prerequisites were met to the jury." *Olean*, 31 F.4th at 681; *see also City of Philadelphia v. Banc of Am. Secs. LLC*, 2025 WL 2180607, at *4 (2d Cir. Aug. 1, 2025) (summary order)

---

leverage over even the largest cattlemen. Lamb Rpt. ¶¶15(a), 189-198, Table 11; ECF 1257-5, Ex. 230 198:1-18 (largest cattle marketing cooperative "not big enough to offset [Defendants'] leverage").

[11] The Exchange Class Period was 17 months (June 1, 2015 through October 31, 2016), with 95% of contracts settling within the first three months of that period. Op.37. By contrast, the Producer Class Period was 57 months (June 1, 2015 through February 29, 2020), during which Defendants slaughtered millions of head of cattle each year. *Id.* at 36.

(district court had not "flipped the burden of proof with respect to predominance" on defendants where it found plaintiffs' expert opinions admissible and defendants remained free to argue "'an alleged failure of proof as to [plaintiffs'] cause of action'") (quoting *Tyson Foods*, 577 U.S. at 457).

## IV. THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT PLAINTIFFS PRESENTED A MODEL CAPABLE OF SHOWING CLASSWIDE INJURY

Defendants next claim the district court committed a "proof error" by allowing Plaintiffs to show classwide impact through Dr. Lamb's regression and accompanying in-sample predictions because some of Defendants' data identifies the feedlot where the cattle were finished and sold rather than the owner. Pet.20-21. The district court did not abuse its broad discretion in treating these admitted analyses as further evidence of common impact.[12]

The court considered and rejected these very arguments below, analyzing Defendants' *Daubert* motion and their contentions about the reliability of Dr. Lamb's opinions and their capacity to establish the elements of Rule 23. It found that Dr. Lamb used "numerous variables to control for supply and demand across time periods, including controls for . . . the different stages of the cattle cycle."

---

[12] *Olean*, 31 F.4th at 663 ("we review the district court's determination that a statistical regression model, along with other expert evidence, is capable of showing class-wide impact . . . for an abuse of discretion") (citation modified).

Op.34. It also found that "Defendants have pointed to no reason why the feedlot payment data cannot be used as a proxy for owner payment data" and "that for at least one Defendant, Cargill, feedyard and payee data was consistent." Op.33. Plaintiffs thus offered "sufficient evidence," which Defendants failed to rebut with their own affirmative model, that "underpayments, if any, to the feedyard, would be passed on to the owner, regardless of the ownership arrangement in place at the time of purchase by Defendants." Op.33. Having admitted Dr. Lamb's expert opinions, the court acted within its discretion in concluding that they supported classwide impact, and correctly left their "persuasiveness" "for the jury." *Tyson Foods*, 577 U.S. at 459.

Defendants contend that "Plaintiffs' proffered regression found dozens of unimpacted feedlots," creating a "multiplier effect[.]" Pet.21. But the record before the court showed that "there is sufficient evidence at this stage to conclude that all class members were impacted similarly enough over the entire Producer Class period to support the use of a common average model to estimate damages." Op.31-32. That evidence included the existence of a "price structure for fed cattle prices paid to individual feedyards, as well as structural characteristics of the fed cattle market that would tend to prevent individual feedyards from avoiding the impact of the alleged conspiracy." Op.32. These are the same kinds of evidence Judge Tunheim

found sufficient to certify the classes in *In re Pork Antitrust Litigation*, 665 F. Supp. 3d 967, 1003-04 (D. Minn. 2023), so there is nothing novel in his ruling here.

Nor did the experts' disagreements present a factual dispute on common impact, because Defendants' expert made no affirmative showing of the number of uninjured class members.[13] *Olean*, 31 F.4th at 680-81 (no abuse of discretion where defendant's expert made no factual finding regarding the number of uninjured class members that required the lower court to resolve). The district court was therefore within its discretion to credit Plaintiffs' expert evidence supporting class certification without deciding which expert is correct. *See* Op.42 ("'district courts are admonished not to weigh or assess the correctness of competing expert opinions'") (quoting *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014)); *Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 468-69 (8th Cir. 2004) ("when a defendant attacks a plaintiff's regression, he must typically do more than point out the flaws in his opponent's analysis" and instead "must show that the omission had an impact on the result"). Dr. Lamb's reliable and admissible

---

13 *See, e.g.*, Lamb Reply ¶109 (Dr. McCrary admitted that he was not putting forth his analysis as "an affirmative model"); ¶185 (only "transforms" Dr. Lamb's regression); 190 (not offering an opinion regarding the propriety of measuring individual class member coefficients); ¶200 (not "offer[ing] any alternative theories on the proper definition of how impact should be defined."); ECF 1484-2 at 14. *See also supra* note 8 (explaining errors in Dr. McCrary's measurement of individual underpayment coefficients).

methods supported the district court's holding that "Plaintiffs have provided sufficient evidence that all class members were impacted similarly enough over the entire Producer Class period that questions of fact common to class members predominate." Op.34; *see also* Op.32 n.22, Op.33; *Tyson Foods*, 577 U.S. at 459; *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1185 (10th Cir. 2023).

Defendants identify no novel legal issue in conclusorily claiming that no precedent supports so-called "impact by proxy." Pet.20-21. Plaintiffs need not present a model identifying the owner of each affected product to establish classwide impact. Courts have repeatedly held that plaintiffs may rely on any admissible statistical evidence to show common impact. E.g., *Tyson Foods*, 577 U.S. at 455; *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 203-04 (E.D. Pa. 2016) (antitrust impact established through a regression estimated from a subset of defendants' sales data because "'representative evidence' is 'a permissible means of' 'fill[ing] an evidentiary gap created by [a defendant's] failure to keep adequate records'") (quoting *Tyson Foods*, 577 U.S. at 459) (alterations in original); *In re Valve Antitrust Litig.*, 780 F. Supp. 3d 1110, 1123 (W.D. Wash. 2024) (rejecting *Daubert* challenge and certifying class where the expert relied on a data sample to establish common impact, and collecting cases).[14]

---

[14] Defendants also appear to argue that courts cannot certify a class with any uninjured class members. Pet.21. Not so. *See, e.g.*, *Olean*, 31 F.4th at 669; *Kleen*

Defendants identify no "proof error" warranting this Court's review.

## CONCLUSION

Defendants have identified no legal error and no clearly erroneous factual finding, so they cannot carry their "onerous burden" of showing that the district court abused its discretion in certifying the Producer Class. *Custom Hair*, 984 F.3d at 600. The court recited and applied the law governing Rule 23 to a record developed over seven years of litigation, and its order raises no unsettled question of law and poses no death-knell risk. Any "crippling liability" Defendants face rests not on any fault of the district court but on their own alleged anticompetitive conduct. The petition should be denied.

---

*Prods.*, 831 F.3d at 927. Regardless, Defendants' skeletal argument was not advanced below, and their authorities concern the manifest design defect rule, which is inapplicable in antitrust cases. ECF 1097, 27-28 (arguing that a class cannot include more than 5-10% uninjured class members); *United States v. Moua*, 145 F.4th 929, 935 (8th Cir. 2025) ("undeveloped argument is waived"); *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1138 (8th Cir. 2015) ("we will not consider an argument raised for the first time on appeal"). The question is also academic because "*all class members* were impacted similarly enough" (Op.34) (emphasis added), so where the de minimis line falls "is not important to [this] particular litigation[.]" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000).

DATED: August 10, 2026 Respectfully Submitted,

/s/ Patrick J. McGahan
Patrick J. McGahan
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 Main Street
P.O. Box 192
Colchester, CT 06415
Tel.: 860-537-5537
Fax.: 860-537-4432
pmcgahan@scott-scott.com

Matthew J. Perez
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue
24th Floor
New York, NY 10169
Tel.: 212-223-6444
Fax: 212-223-6334
matt.perez@scott-scott.com

Patrick J. Coughlin
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 798-5325
Facsimile: (619) 233-0508
pcoughlin@scott-scott.com

Jennifer W. Sprengel
Daniel O. Herrera
Kaitlin Naughton
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**

135 S. LaSalle Street, Suite 3210
Chicago, IL 60603
Tel.: 312-782-4882
Fax: 312-782-4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
knaughton@caffertyclobes.com

***Counsel for Plaintiffs-Respondents***

## CERTIFICATE OF COMPLIANCE

1. This document complies with word limit of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the parts of the document exempted by Rules 5(b)(1) and 32(f), it contains 5,178 words.

2. This document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared using Microsoft® Word for Microsoft 365 in 14-point, Times New Roman font.

3. This response complies with Local Rule 28A(h)(2) because it has been scanned for viruses and is virus-free.

Dated: August 10, 2026

/s/ Patrick J. McGahan
Patrick J. McGahan

*Counsel for Plaintiffs-Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system and that copies of the foregoing will be sent by next-day delivery to counsel of record.

/s/ Patrick J. McGahan
Patrick J. McGahan